IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Pilot Travel Centers LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:19-cv-0710-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| BarGib Enterprises, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The following matter is before the court on plaintiff Pilot Travel Center LLC's ("Pilot") motion for summary judgment, ECF No. 21. For the reasons set forth below, the court grants the motion.

## I. BACKGROUND

This contract dispute arises out of a commercial sublease agreement (the "Sublease Agreement") between Pilot and BarGib Enterprises, Inc. ("BarGib") for the sublease of a 7.3-acre parcel of land in Berkeley County (the "Property"). The following facts are not in dispute. BarGib, the sublessor, and Pilot, the sublessee, entered into the Sublease Agreement on November 20, 2017 so that Pilot could develop and operate a Pilot/Flying J Travel Center service station on the Property. The Sublease Agreement did not automatically begin a leasing term; instead, it established parameters for the relationship between Pilot and BarGib and included several conditions precedent to the commencement of a binding lease term. The Sublease Agreement established an "Inspection Period" between the execution date of the Sublease Agreement and the commencement of the sublease, during which time Pilot and BarGib made preparations for the lease term without binding themselves to a lease.

1

Relevant to the current action, Section 21 of the Sublease Agreement required Pilot to pay $200,000 to BarGib by the commencement date of the sublease (the "Commencement Date") to assist BarGib with the removal of "two modular office buildings and its container storage off of the Leased Premises." ECF No. 21-2 at 22–23. Section 21 further required Pilot to deposit the first $100,000 with an escrow agent upon execution of the Sublease Agreement as a reimbursable deposit (the "Removal Reimbursement Deposit") before the full $200,000 came due. Importantly, Section 21 required BarGib to return the Removal Reimbursement Deposit in the event that Pilot canceled the Sublease Agreement before the Commencement Date:

> In the event Pilot has not canceled this Agreement as provided in **Section 25(a)(2)** below on or before the date that is thirty (30) days after execution of this Agreement by both parties, the Removal Reimbursement Deposit shall be released to [BarGib]; provided that [BarGib] shall refund the Removal Reimbursement Deposit to Pilot in full in the event Pilot later elects to cancel this Agreement as provided in **Section 25(a)(2)** below.

Id. at 23 (emphasis in original). Section 25(a)(2) of the agreement states: "Pilot, at its sole discretion, may cancel this Agreement at any time on or before the expiration of Inspection Period, without penalty, upon production of written notice to [BarGib] of Pilot's intent to terminate this Agreement." Id. at 25. Upon execution of the Sublease Agreement on November 30, 2017, Pilot deposited the Removal Reimbursement Deposit of $100,000 with an escrow agent of Fidelity Bank. On December 29, 2017, the escrow agent released the Removal Reimbursement Deposit to BarGib.

The Sublease Agreement established a 120-day "Inspection Period," which commenced upon the execution of the Sublease Agreement. As such, the Inspection Period under the Sublease Agreement was initially set to expire on March 30, 2018. The Sublease Agreement also gave Pilot a right to extend the Inspection Period for two

2

successive sixty-day periods, provided that it pay $10,000 and give BarGib notice before the original expiration date. The Sublease Agreement also established that

> extensions of the Inspection Period shall constitute an acknowledgement by Pilot that it is satisfied with and/or has waived all contingencies pertaining to the Leased Premises <u>other than obtaining the proper zoning and/or permits for the development and construction of its Travel Center</u>.

Id. at 25 (emphasis added). On March 19, 2018, Pilot and BarGib entered into the "First Amendment to Sublease Agreement", under which the parties amended Section 25(a)(1)'s waiver clause:

> such extension of the Inspection Period shall constitute an acknowledgement by Pilot that it is satisfied with and/or has waived all contingencies pertaining to the Leased Premises <u>other than those related to (i) a defect in or exception to the title of the Leased Premises; or (ii) its inability to obtain the proper zoning and/or permits for the development and construction of Pilot's Travel Center.</u>

Id. at 39 (changes underlined). Before the expiration of the Inspection Period, on March 20, 2018, Pilot exercised its right to extend the inspection period for 60 days, until May 19, 2018.

On May 8, 2019, the parties entered into the "Second Amendment to Sublease Agreement", which pushed back the Inspection Period's expiration date to July 19, 2018 and gave Pilot the right to extend the period for an additional 60 days for a $20,000 fee. The Second Amendment again changed the language of the satisfaction/waiver clause to state:

> such extension of the Inspection Period shall constitute an acknowledgement by Pilot that it is satisfied with and/or has waived all contingencies pertaining to the Leased Premises other than those related to (i) a defect in or exception to the title of the Leased Premises; or (ii) its inability to obtain the proper zoning and/or permits for the development and construction of Pilot's Travel Center (<u>with Pilot hereby agreeing to use commercially reasonable efforts to obtain such zoning and/or approvals</u>).

3

Id. at 42 (changes underlined). On July 9, 2018, the parties entered into the "Third Amendment to Sublease Agreement", which again pushed back the expiration date of the Inspection Period to September 17, 2018 but left the Sublease Agreement otherwise unchanged. Finally, on September 12, 2018, the parties entered into the "Fourth Amendment to Sublease Agreement", which pushed back the expiration date of the Inspection period for a final time to October 1, 2018. Each Amendment to the Sublease Agreement provided: "Except as herein modified, all terms and conditions of the Agreement shall remain in full force and effect, shall not be considered amended or modified except as is specifically set forth in this Amendment, and are hereby ratified and confirmed in all respects." Id. at 39, 43, 44, and 46.

Despite making commercially reasonable efforts to do so,[1] Pilot failed to obtain proper zoning approval and/or permits for the development and construction of the Pilot service center. Therefore, on September 28, 2018, Pilot notified BarGib in a letter that it was terminating the Sublease Agreement, pursuant to Section 25(a)(2). In the same letter, Pilot demanded return of the Removal Reimbursement Deposit as required by Section 21 of the Sublease Agreement. In an October 22, 2018 letter, counsel for BarGib responded to Pilot's notice-of-termination letter but failed to take a position as to the Removal Reimbursement Deposit. Pilot sent a follow-up letter on November 24, 2018, again demanding return of the Removal Reimbursement Deposit. On December 18, 2018, counsel for BarGib indicated that because of BarGib's "strong feelings" about its entitlement to the Removal Reimbursement Deposit, the parties should come to a

---

[1] Pilot has presented evidence that it made commercially reasonable efforts to obtain the proper zoning for the construction of the Pilot service center. See ECF No. 21-2, Deptula Aff. ¶ 17. BarGib has not contested this point.

compromise concerning the funds. Id. at 51. On January 23, 2019, Pilot reiterated its position and informed BarGib that it would pursue legal action if the Removal Reimbursement Deposit was not returned by February 15, 2019. BarGib did not return the Removal Reimbursement Deposit, and this lawsuit followed.

On March 11, 2019, Pilot filed its complaint against BarGib with this court, alleging claims for breach of contract, unjust enrichment, conversion, "money had and received," and specific performance. ECF No. 1. On November 11, 2019, Pilot filed a motion for summary judgment. ECF No. 21. On December 17, 2019, BarGib responded to the motion, ECF No. 29, and on December 27, 2019, Pilot replied, ECF No. 32. The court held a hearing on the motion on February 19, 2020. Thus, this matter is ripe for the court's review.

## II. STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, "'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

Any reasonable inferences are to be drawn in favor of the nonmoving party. Anderson, 477 U.S. at 255, Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson, 477 U.S. at 252; Stone, 105 F.3d at 191. Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)). If the adverse party fails to provide evidence establishing that the fact finder could reasonably decide in his favor, then summary judgment shall be entered "regardless

6

of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

### III. DISCUSSION

Pilot contends that is it entitled to summary judgment on each of its claims against BarGib. Relevant to the court's analysis, Pilot alleges that BarGib's failure to return the Reimbursement Removal Deposit constitutes a breach of contract. Pilot also contends that it is entitled to reasonable attorney's fees based on the attorney's-fee provision in the Sublease Agreement. In response, BarGib contends that Pilot made oral assurances that it would not cancel the Sublease Agreement and that these alleged assurances entitle BarGib to retain the Reimbursement Removal Deposit. Additionally, BarGib asserts a number of affirmative defenses. The court finds that BarGib breached the Sublease Agreement and that Pilot is entitled to reasonable costs and attorney's fees. Because the court finds that Pilot is entitled to relief on its breach of contract claim, the court will not address Pilot's other causes of action.

    **A.**     **Breach of the Sublease Agreement**

Pilot contends that it is entitled to summary judgment on its breach of contract claim because the Sublease Agreement clearly requires BarGib to return the Removal Reimbursement Deposit upon Pilot's cancellation of the contract, and although Pilot properly canceled the contract, BarGib has yet to return the Removal Reimbursement Deposit. The court agrees.

Because the court sits in diversity, it applies state law to determine whether BarGib breached the Sublease Agreement. In South Carolina, "to recover for a breach of contract, the plaintiff must prove: (1) a binding contract; (2) a breach of contract; and (3)

7

damages proximately resulting from the breach." Hennes v. Shaw, 725 S.E.2d 501, 506 (S.C. Ct. App. 2012). Here, there is no dispute that the Sublease Agreement was a binding contract between Pilot and BarGib. There is also no dispute that Section 21 of the Sublease Agreement required BarGib to return the Removal Reimbursement Deposit upon Pilot's termination of the contract.[2] It is also undisputed that BarGib has not returned the Removal Reimbursement Deposit to Pilot. Moreover, BarGib does not argue that Pilot's cancellation of the Sublease Agreement was invalid under the terms of the contract. Thus, it is clear to the court that BarGib's retention of the Removal Reimbursement Deposit constitutes a breach of the Sublease Agreement.

BarGib asserts a single argument to explain why its actions were permissible under the Sublease Agreement. BarGib contends that "due to [Pilot's] repeated encouragements that [it] was not going to terminate the Sublease Agreement and that BarGib needed to make the subject property ready for use by [Pilot], [BarGib] used the Removal Reimbursement Deposit in accordance with the terms of the Sublease Agreement."[3] ECF No. 29 at 6. BarGib further argues that the court can consider evidence of Pilot's oral assurances as course-of-dealing evidence because evidence of the oral assurances "do[es] not seek to contradict the Sublease Agreement but explain the

---

[2] BarGib stated in its response, "In the matter at hand, BarGib does not question the wording of the [Sublease] Agreement between [Pilot] and BarGib." ECF No. 29 at 5.

[3] BarGib provides no support for the assertion that it used the Removal Reimbursement Deposit "in accordance with the terms of the Sublease Agreement." ECF No. 29 at 6. The Sublease Agreement authorizes the use of the funds for the purpose of removing "two modular office buildings and its container storage off of the Leased Premises." ECF No. 21-2 at 22–23. BarGib has not presented any evidence that it used the funds for this purpose; Pilot, however, has presented evidence that the modular office building at issue and its containers remain on the Property.

course of dealings between [Pilot] and BarGib." ECF No. 29 at 5. BarGib's argument is replete with fatal flaws.

First, the court is unsure how Pilot's alleged assurances, even assuming their truth, negate BarGib's breach of contract. BarGib alleges that Pilot orally promised that Pilot would not cancel the Sublease Agreement and orally encouraged BarGib to prepare the Property. Even assuming that Pilot made such assurances and assuming those assurances were binding and assuming the court could consider such assurances under the parol evidence rule, the assurances would still do nothing to change the fact that the Sublease Agreement unambiguously required BarGib to return the Removal Reimbursement Requirement upon Pilot's cancellation of the contract. In essence, BarGib's theory is that it only breached the contract because Pilot breached its oral assurances first. That theory, even assuming its legal legitimacy, might support a counterclaim or affirmative defense, but it does nothing to support a theory that BarGib did not breach the Sublease Agreement.

Second, the court cannot consider the evidence of Pilot's alleged oral assurances under the parol evidence rule. BarGib argues that "the verbal assurances and encouragements given by [Pilot] to BarGib are admissible under S.C. Code Ann. § 36-2A-202(a) as [course-of-dealing evidence]." ECF No. 29 at 5. The statute on which BarGib relies states:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
>
> (a) by course of dealing or usage of trade or by course of performance; and

> (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

S.C. Code Ann. § 36-2A-202.

As an initial matter, S.C. Code S.C. Code Ann. § 36-2A-202 is included in Chapter 2A, which exclusively applies to the lease of goods. See S.C. Code Ann. § 36-2A-102 ("This chapter applies to any transaction, regardless of form, that creates a lease."); S.C. Code Ann. § 36-2A-103 ("'Lease' means a transfer of the right to possession and use <u>of goods</u> for a term in return for consideration. . . .") (emphasis added). Here, the Sublease Agreement is for the lease of land, not goods. Thus, the statute is inapplicable.

Further, there is no course-of-dealing evidence in this case. A course of dealing between parties refers to an "established pattern of conduct between parties in a series of transactions (e.g., multiple sales of goods over a period of years)." COURSE OF DEALING, Black's Law Dictionary (11th ed. 2019). This dispute is about a single transaction between two parties who otherwise have no business history. BarGib alleges that Pilot made oral promises throughout the life of the Sublease Agreement that Pilot would not cancel the contract, despite Section 25(a)(2) clearly permitting Pilot to do so. These alleged assurances do not fall within the definition of course-of-dealing evidence.

Any evidence of the assurances Pilot allegedly made to BarGib is clearly barred by the parol evidence rule. "The parol evidence rule prevents the introduction of extrinsic evidence of agreements or understandings contemporaneous with or prior to execution of a written instrument when the extrinsic evidence is to be used to contradict, vary, or explain the written instrument." <u>Redwend Ltd. P'ship v. Edwards</u>, 581 S.E.2d

496, 502 (S.C. Ct. App. 2003) (citing In re Estate of Holden, 539 S.E.2d 703, 708 (S.C. 2000)). Here, BarGib seeks to admit the very type of evidence the parol evidence rule contemplates and excludes—evidence of contemporaneous understandings. BarGib seeks to admit evidence that Pilot orally promised not to cancel the contract and orally encouraged BarGib to make the Property "ready for use by [Pilot]." ECF No. 29 at 6. The Sublease Agreement, however, was validly modified by written amendments four times, the latest of which was executed just sixteen days before Pilot's cancellation of the contract. The parol evidence rule bars the court's consideration of any oral assurances that Pilot allegedly made prior to, or contemporaneous with, the Fourth Amendment to the Sublease Agreement, which the parties executed on September 12, 2018. The alleged oral agreements are directly contradictory to the terms of the Sublease Agreement, which unambiguously allow Pilot to cancel the contract before the expiration of the Inspection Period and clearly require BarGib to return the Removal Reimbursement Deposit upon Pilot's cancellation. Therefore, a straightforward application of the parol evidence clearly precludes the court from considering such evidence. See In re Estate of Holden, 539 S.E.2d at 708 ("The parol evidence rule is a rule of substantive law, not a rule of evidence."). Thus, to the extent that BarGib urges the court to consider evidence of assurance Pilot allegedly made to BarGib prior to September 12, 2018, the parol evidence rule precludes the court's consideration of any such prior or contemporaneous agreements.

To the extent that BarGib asks the court to consider that oral assurances Pilot allegedly made after September 12, 2018, such assurances have no legal effect. At the hearing, BarGib argued that Pilot's alleged assurances validly modified the Sublease

Agreement. Because the Sublease Agreement falls within the category of contracts governed by the statute of frauds, oral modifications, even assuming their truth, are without legal effect. "Any contract for an interest in land or any agreement that is not to be performed within one year must be in writing and signed by the party against whom it is seeking to be enforced." Player v. Chandler, 382 S.E.2d 891, 894 (S.C. 1989) (citing S.C. Code Ann. §§ 32-3-10 and 27-35-20). "[A] contract required to be in writing by the South Carolina Statute of Frauds cannot be orally modified. Id. (citing Windham v. Honeycutt, 302 S.E.2d 856 (S.C. 1983)). Here, the Sublease Agreement clearly falls under the statute of frauds, as it is a contract for the lease of land for a term of more than a year. Therefore, under South Carolina law, any modifications thereto must be in writing. Thus, the oral modifications that BarGib alleges, even assuming their truth, are legally benign.

BarGib urges the court to rely on two South Carolina cases for the proposition that oral modifications to the Sublease Agreement are valid. Each of the cases is unavailing. The first, Evatt v. Campbell, stands for the proposition that, generally, contracts can be modified orally. 106 S.E.2d 447 (1959). While contracts may be generally modified through oral agreements in South Carolina, contracts governed by the statute of frauds cannot be. Indeed, the contract at issue in Evatt did not fall under the statute of frauds, as it was for a one-time service for a price less than $5,000.[4] The

---

[4] "The complaint alleges that the appellant employed the respondent on June 18, 1953 for a period ending February 28, 1954 and agreed to pay the respondent for services rendered the sum of Three Thousand Six Hundred & 00/100 ($3,600) Dollars. The respondent asserts the performance of services and the appellant paid him only the sum of Seven Hundred & 00/100 ($700) Dollars, leaving the appellant indebted to him for the balance of Two Thousand Nine Hundred & 00/100 ($2,900) Dollars." Evatt, 106 S.E.2d at 448.

second case for which BarGib advocates, Madren v. Bradford, does involve a real estate contract that was subject to the statute of frauds. 661 S.E.2d 390 (S.C. Ct. App. 2008). However, the issue that the South Carolina Court of Appeals confronted there was whether a party to the real estate contract waived his right to demand strict compliance with the contract's closing date.[5] Therefore, that case is also inapplicable to the matter at hand and does nothing to convince the court that the Sublease Agreement was subject to oral modification.

Thus, the law and the admissible evidence compels the conclusion that BarGib breached the Sublease Agreement.[6] In addition to breach of contract, Pilot argues that it is entitled to summary judgment on its claims for unjust enrichment, conversion, and specific performance. Because the court finds that Pilot is entitled to summary judgment on its breach of contract claim, the court need not reach any of Pilot's other causes of action.[7]

### B. BarGib's Affirmative Defenses

In addition to arguing that it did not breach the Sublease Agreement, BarGib asserts a number of affirmative defenses that it claims absolve it from liability.

---

[5] "Therefore, the issue before us is whether the trial court's finding, that Bradford's conduct waived strict compliance, is reasonably supported by evidence contained in the record." Madren v. Bradford, 661 S.E.2d 390, 394 (S.C. Ct. App. 2008).

[6] Additionally, BarGib argues, without citation, that Pilot's expectation that BarGib would return the Removal Reimbursement Deposit upon Pilot's cancellation of the contract "belies logic." ECF No. 29. Unfortunately for BarGib, it does not belie the clear language of the contract.

[7] Pilot's complaint seeks as damages the cost of the Removal Reimbursement Deposit and reasonable fees and costs. Pilot pleaded its other causes of action in the alternative and asked for summary judgment on those claims in the event that the court did not grant summary judgment on its breach of contract action. Therefore, finding that Pilot is entitled to the relief it seeks on its breach of contract claim, the court need not reach Pilot's other causes of action.

Specifically, BarGib argues that: (1) Pilot's claim is barred by the doctrine of latches, (2) Pilot should be denied recovery based on estoppel, and (3) the Sublease Agreement is unconscionable.[8] Even viewed in a light most favorable to BarGib, the evidence does not support any of BarGib's pleaded affirmative defenses.

BarGib argues that Pilot's claim is barred by the doctrine of estoppel, based on the alleged assurances Pilot made to BarGib. In South Carolina, "[t]he doctrine of estoppel may be invoked to prevent a party from asserting the statute of frauds." Collins Music Co. v. Cook, 316 S.E.2d 418, 420 (S.C. Ct. App. 1984). The party asserting estoppel "must show that he has suffered a definite, substantial, detrimental change of position in reliance on the contract, and that no remedy except enforcement of the bargain is adequate to restore his former position." Id. "It is not sufficient to show merely that he has lost an expected benefit under the contract." Id. "Before the estoppel doctrine can be invoked, however, there must be competent proof of the existence of the oral contract." Springob v. Univ. of S.C., 757 S.E.2d 384, 388 (S.C. 2014) (citing Atl. Wholesale Co. v. Solondz, 320 S.E.2d 720, 723 (S.C. Ct. App. 1984).

> The elements of equitable estoppel as related to the party being estopped are: (1) conduct which amounts to a false representation, or conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention that such conduct shall be acted upon by the other party; and (3) actual or constructive knowledge of the real facts. The party asserting estoppel must show: (1) lack of knowledge, and the means of knowledge, of the truth as to the facts in question; (2) reliance upon the conduct of the

---

[8] BarGib also pleaded the following affirmative defenses in its answer: reliance, justification, failure to act in a commercially reasonable manner, good faith, and parol evidence rule. These are not recognized affirmative defenses for a breach of contract claim in South Carolina. Furthermore, BarGib failed to argue their legitimacy in its summary judgment briefing or at the hearing. Therefore, the court declines to consider these affirmative defenses.

party estopped; and (3) a prejudicial change of position in reliance on the
conduct of the party being estopped.

Strickland v. Strickland, 650 S.E.2d 465, 470 (S.C. 2007) (citing Boyd v. Bellsouth Tel. Tel. Co., Inc., 633 S.E.2d 136, 142 (S.C. 2006)). "One with knowledge of the truth or the means by which with reasonable diligence he could acquire knowledge cannot claim to have been misled." S. Dev. Land & Golf Co. v. S.C. Pub. Serv. Auth., 426 S.E.2d 748, 751 (S.C. 1993) (citing Adams v. Adams, 66 S.E.2d 809 (S.C. 1951)). Further, the reliance of the party asserting estoppel must be reasonable. Rushing v. McKinney, 633 S.E.2d 917, 925 (Ct. App. 2006).

BarGib's estoppel defense is based on the oral statements BarGib claims Pilot made throughout the life of the Sublease Agreement that Pilot would not cancel the Sublease Agreement and that BarGib should begin preparing the Property for the sublease. Even assuming the truth of these allegations, BarGib has not presented any evidence that entitles it to an estoppel defense because (1) any reliance on Pilot's alleged assurances would have been unreasonable and (2) BarGib has presented no evidence that it prejudicially changed its position in reliance on the alleged assurances.[9]

BarGib and Pilot amended the Subleasing Agreement to change the terms governing the Inspection Period four times. In each amendment, Pilot made clear that its extension of the Inspection Period did not "constitute an acknowledgement [] that it is

---

[9] Pilot also argues that BarGib has failed to produce any evidence that Pilot ever made any oral assurances to BarGib. However, BarGib has presented a single line of testimony evidence from its CEO, Joseph Bartone, that Bartone was "led to believe that [Pilot] intended to accept the lease even if all of the entitlements it was applying for were not received." ECF No. 29-3 at 3. While this evidence is thin, the court need not determine whether it is sufficient to defeat summary judgment because BarGib cannot satisfy other elements of estoppel.

satisfied with and/or has waived all contingencies pertaining to the Leased Premises with respect to 'obtaining the proper zoning and/or permits for the development and construction of its Travel Center.'" ECF No. 21-2 at 25. In fact, the Second Amendment to the Sublease Agreement clarified that the extension of the Inspection Period did not constitute an acknowledgement that Pilot was satisfied with the Property with respect to "(i) a defect in or exception to the title of the Leased Premises; or (ii) its inability to obtain the proper zoning and/or permits for the development and construction of Pilot's Travel Center (with Pilot hereby agreeing to use commercially reasonable efforts to obtain such zoning and/or approvals)." Id. at 42. Each of the four times that Pilot and BarGib entered into an Amendment to the Sublease Agreement, Pilot specifically reserved its right to cancel the contract if it was unable to obtain proper zoning or permits for development. BarGib and Pilot entered into the Fourth Amendment, in which BarGib agreed to that provision, just sixteen days before Pilot canceled the contract. Pilot made explicitly clear in written agreements that it could cancel the contract in the event that it did not obtain the proper zoning or permits for development. When it failed to obtain those permits or licenses, it canceled the contract, in accordance with the Sublease Agreement and each successive amendment. Therefore, any reliance by BarGib on assurances Pilot allegedly made throughout the execution of the Amendments to the Sublease Agreement was unreasonable.

Further, BarGib has failed to produce any evidence that it changed position based on the assurances of Pilot. As Pilot points out in its motion, BarGib has made claims that it prepared the Property for Pilot but has failed to present any evidence of changes it actually made. Further, the Sublease Agreement only permitted BarGib to spend the

16

Removal Reimbursement Deposit on removing the buildings and attached containers from the Property. See ECF No. 21-2 at 22 (requiring Pilot to make the Removal Reimbursement Deposit "to assist [BarGib] with" "mov[ing] two[] modular office buildings and its container storage off of the Leased Premises."). Pilot has presented evidence that neither have been removed from the property. Therefore, BarGib's estoppel defense is not supported by the evidence, even viewing it in a light most favorable to BarGib.

BarGib's additional affirmative defenses, the doctrines of latches and unconscionability, are clearly inapplicable to this matter. "Unconscionability has been recognized as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms which are so oppressive that no reasonable person would make them and no fair and honest person would accept them." Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc., 472 S.E.2d 242, 245 (S.C. 1996). Here, the parties are two sophisticated business entities who held equal bargaining power. Further, the parties entered into five arm's-length bargains, each of which reserved Pilot's right to cancel the contract. Pilot has presented no evidence that the Sublease Agreement was unconscionable. The doctrine of latches is also clearly inapplicable. "[T]he statute of limitations, rather than laches, is applicable to a legal as opposed to an equitable claim. Treadaway v. Smith, 479 S.E.2d 849, 856 (S.C. Ct. App. 1996) (citing Edens v. Edens, 435 S.E.2d 851 (S.C. 1993). Pilot's claim for breach of contract is a legal claim and thus governed by the applicable statute of limitations, S.C. Code Ann. § 15-3-530(5), which mandates that an action in contract be brought within three years of a party's breach.

Thus, the doctrine of latches is inapplicable. As such, BarGib's affirmative defenses must fail. For these reasons, the court grants Pilot's motion.

### C. Attorney's Fees and Costs

In its motion for summary judgment, Pilot asks that the court award it the reasonable attorney's fees and costs it incurred in litigating this action. BarGib makes no argument in response regarding an award of attorney's fees. "In South Carolina, the authority to award attorney's fees can come only from a statute or be provided for in the language of a contract. There is no common law right to recover attorney's fees." Seabrook Island Prop. Owners' Ass'n v. Berger, 616 S.E.2d 431, 434 (S.C. Ct. App. 2005) (citing Harris–Jenkins v. Nissan Car Mart, Inc., 557 S.E.2d 708, 710 (S.C. Ct. App. 2001). Where a contract provides for the recovery of attorney's fees and costs, "the award of attorney's fees is left to the discretion of the trial judge and will not be disturbed unless an abuse of discretion is shown." Id. (citing Baron Data Sys., Inc. v. Loter, 377 S.E.2d 296, 297 (S.C. 1989)). South Carolina courts have enforced reasonable fee-shifting contract provisions. See S.C. Elec. & Gas Co. v. Hartough, 654 S.E.2d 87, 92 (S.C. Ct. App. 2007) (awarding attorney's fees in favor of non-breaching party where the contract permitted the prevailing party to seek fees and the non-breaching party properly pleaded the request for attorney's fees).

Section 23(e) of the Sublease Agreement states:

> Attomev's Fees. The prevailing party in any litigation shall be entitled to reasonable documented attorneys' fees and costs to be fixed by the court in such action or proceeding.

ECF No. 21-2 at 24. The Sublease Agreement clearly entitles a prevailing party to recoup its reasonable costs and attorney's fees against a breaching party. Further, the

Sublease Agreement is a contract between two sophisticated business entities who entered into the agreement with equal bargaining power.  BarGib's retention of the Removal Reimbursement Deposit was a clear breach of the unambiguous terms of the Sublease Agreement.  BarGib has failed to present any argument that would excuse or justify its clear breach.  An award of attorney's fees is therefore justified.  Moreover, BarGib conceded at the hearing that in the event the court finds that BarGib breached the Sublease Agreement, Pilot is entitled to attorney's fees and costs under the Sublease Agreement.  Therefore, the court finds that Pilot is entitled to reasonable attorney's fees and costs and directs Pilot to submit a motion for attorney's fees, which provides the court with evidence of the reasonable costs and fees it has incurred in this matter.

## IV.   CONCLUSION

For the foregoing reasons the court **GRANTS** Pilot's motion for summary judgment.

**AND IT IS SO ORDERED.**

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**February 28, 2020**
**Charleston, South Carolina**